we save the best cases for last this is the final day of sitting for this panel we have two cases on the docket for argument and other cases to discuss once among ourselves once argument is over first case is United States versus Malcolm Jackson Mr. Hogan I believe or Miss Hogan I believe good morning and may it please the court Jane Hogan on behalf of Malcolm Jackson I'd like to reserve three minutes of my time for rebuttal the Fourth Amendment at its very core protects the rights of a person to retreat to the confines of his or her home and there be free from unwanted and unreasonable governmental intrusion in this case the governor the district court committed error by finding that there were exigent circumstances justifying an initial warrantless entry into Malcolm Jackson's home based solely on a 911 call claiming that there was a domestic disturbance happening in the Jackson's homes and the the exigent circumstances were based on this 911 call and also the presence of someone in the road who claimed to have heard somebody being beaten inside the home what makes this case unique from other other cases including City of Eunice is that the door to the Jackson this is 1030 in the morning the door to their home is wide open so the officers have a clear visual on mr. and mrs. Jackson yes they're engaged in a very heated argument but they're face-to-face they're not touching there's no sounds of thugs there's nobody has a weapon nobody seems to be in physical distress and upon seeing the police officers they immediately turn and tell the police officers to leave which is their fourth amendment right to do rather than respecting that the local sheriff's office walked into the house in one fluid motion and Sanchez walks right behind lieutenant Vincent and they're in the home which is the fourth of the first of what I count to be three fourth amendment violations in this case and so the first point is that exigent circumstances do not exist here and that the Jacksons also have a right to resist an unlawful arrest they're arrested for disturbing the pea you know they they tell the officers to leave the officers don't do that the officers are already in the house by this point and they both mr. and mrs. Jackson become are ultimately arrested for disturbing the interfering with the law enforcement investigation and resisting arrest which all of these charges ultimately don't stick because they're not in public they have the right you have you have the right to argue with somebody in your own home and to be free from governmental intrusion and if they're so I the district court in determining that there were exigent circumstances while there might have been reasons to go over to the house they dissipate the moment that the officers get there and they put eyes on both mr. and mrs. Jackson and nobody is in physical distress there's also a after they're unlawfully seized from the house and put in the back of respective police units there is an additional fourth amendment violation by a protective sweep of the home which is completely unjustified because the house is already secured the Jacksons are on their way to be booked let me ask are you saying the protective sweep is was valid because the events that occurred before that weren't valid or is it independently invalid regardless of what we decide as to the initial entry into the home and they're taking I think that the initial entry into the home no I think that that's the key inquiry and what's asking is a protective sweep make sure nobody else is there making sure nothing dangerous is left behind no child is there whatever else they may have been checking for are you saying that's unconstitutional as a matter of view overall or was it invalid in this case because it's no right to seize these people in the first place in this case your honor and there was no indication that there was anybody else in the home that's why you check isn't it to see yeah well I think that uh you know these two off at the two initial responding officers are already in the kitchen and since they've had this interaction they've drawn their tasers they've arrested both of them so the key point of it I mean the key point of this house is the kitchen they've already established that nobody else is in the kitchen or the living room this is a mobile home it's not a very large place there's no justification to then after everything is secured and the Jacksons are leaving and no officer expresses fear for his safety for the narcotics officers to arrive and both of whom know that mr. Jackson's under investigation for drug alleged drug trafficking they arrived subsequent and then they're the ones that conduct the protective sweep of the home and they go into the bedrooms and everything else when did the officers detect the smell of marijuana the initial there's two initial responding officers officer Sanchez doesn't testify at all that he smells marijuana officer Vinson who's the first person who testified at the hearing he says that when he leaves his car he testifies that when he leaves his car he smells marijuana if you look at the picture from the search warrant this is a mobile home there are several houses close by so he testified that he parked on the road and as he exited his car he smelled marijuana the narcotics officers then testified that they smelled marijuana emitting from the residents after they got there several minutes later and after the Jacksons were already in the home when the officers the initial responding officers saw the Jacksons nobody's smoking marijuana there's and they're inside the kitchen they don't if there had been burning marijuana or something to the effect in the kitchen they clearly would have said so and nobody not even the narcotics officers testified that they smelled marijuana went inside the home so if they smelled it outside why would they have to say again that they smelled it inside well I mean I think that that goes to the reasonableness or the justification for going into someone's home I think that while while it's justified to go into a car if you smell marijuana during a traffic stop the home is different it's a totally different animal and if you just smell marijuana on the road without anything more does that justify walking into someone's home without a warrant and looking around I don't think so and several states including Louisiana have subsequently passed laws stating that this odor of marijuana alone is insufficient to to justify a warrantless search Louisiana's passage law after this of course but so I think it's relevant and if you look at the pictures from the house if you look at the not-to-scale diagram that was drawn by the narcotics officers the locate the only marijuana that's found in this house is a small bag of unsmoked marijuana and some residue or remnants of cigars presumably containing marijuana in some ashtrays in the back bedroom and the bathroom it's not next to the door it's not from the from the is it relevant that there was no marijuana in plain sight or even in the air isn't this about probable cause yeah can't you issue a warrant based on probable cause that results in no seizures and no no finding of drugs yes it I think it is relevant because the court relies he keeps on the district court relies significantly on well the odor of marijuana alone would have justified this and my position is is that the odor of marijuana the subsequent warrant that happens based on the odor of marijuana cannot sanitize the Fourth Amendment violations that have already occurred by the officers going into the house and without exigent circumstances justifying it then seizing the Jackson's then conducting a protective sweep looking around then applying for a warrant based on odor and the allegation that they saw scales and baggies in plain view from the doorway which I think again if you look at the pictures it's it's pretty impossible that they would have had that vantage point Sanchez officer Sanchez that one of the two initial responding officers testified that he saw the scales and baggies once he was inside the home and the Lieutenant Vincent had testified that he was not sure whether he could have seen it while he was inside he could have seen it was outside both Vincent and Sanchez testified that they didn't pause the door they didn't walk up and say are you guys okay what's going on they walked into the house in one fluid motion and that is not sanctioned by the Fourth Amendment now officer Hebert didn't say in his affidavit that he saw the paraphernalia from the doorway does it it doesn't explicitly say that in the affidavit but he testified extensively at the evidentiary hearing claiming to have seen them from the doorway but don't we look at the affidavit supporting the search warrant and not the testimony at the hearing correct your honor so but I think that even reading that affidavit it says we we got there we smelled marijuana in an image at the doorway I smelled marijuana coming in from the house then I saw baggies and a scale in plain view I think that and my friend concedes that it's perhaps ambiguous as to whether he doesn't explicitly say I am at the doorway when I see the scales but it is it is logical to read that from the from the quarters the affidavit if it's ambiguous then how do we get to the intentionality element for purposes of any false statement I think that I think that's a I think that the again I think that the the fact that there is I think that there's several things that point to false statements and I know that this wasn't extensively briefed by trial counsel in the district court I know that the district court treated it as if it had been briefed and reached the conducted a Frank's analysis but I do think though that like the three fourth amendment violations that occurred prior to getting the warrant the warrant itself can't so these these narcotics officers were at the station and they testified that they showed up to back for backup because it was a you know a hot situation or whatever but Sanchez was the backup this was a routine domestic violence you know without injury phone call and the officers who the narcotics officers were well aware that mr. Jackson was under investigation and so you kind of look at it seems more that they left the station and they went there even though the Jacksons were already on their way to the jail they went there more as a preacher you know to as a pretext of finding a reason to search the house knowing that mr. Jackson was under investigation and yet any evidence in the record that this was a pretextual visit to the to the house aren't domestic violence situations fluid and potentially dangerous I mean aren't those aren't those that result in officers getting shot you of course your case there's no indication that there's a weapon they put eyes on them there nobody has a weapon nobody has a gun that they can see yes from the door exactly exactly they can see from the door and I think that that's what makes this case distinctive distinct distinguishable from even troop this this court held in troop that the Constitution requires more than the mere possibility of an exigent circumstance or the mere possibility of injury to justify a warrantless entry and here we have they have eyes on them they have eyes on them but you have the wife's sister calling saying my sister just told me he's beating her she can't breathe they pull up you have a bystander a completely disinterested bystander who says he's beating the words to the effect of he's beating her up in there and they can hear screaming from the street and yes they can see that they're just standing but if there was violence just a few minutes before why was it not reasonable for them to think that the violence might result again any minute well if that is the case they didn't even give the Jacksons the opportunity to walk outside of their house before they entered so I think that if you put eyes on people you see that there it nobody's in distress miss mrs. Jackson is not in distress she's not gasping nobody appears to have injuries without even and such as in the Brigham City case there's you know this isn't like an injury that's that's that's about to escalate they they didn't give the Jacksons the opportunity to even walk outside the door before they were already in the house so they should have waited until he punched her no your honor no no I think that if you walk up you see Pete you put eyes on people and you say come out and if they're there to protect mrs. Jackson they wound up arresting mrs. Jackson for disturbing the peace and they brought they booked her and they brought her to so if they're there really because they're concerned they they testified that they never asked her if she needed medical attention they never asked her if she was in physical distress they they got in the sense that they mr. Jackson and mrs. Jackson exercised their fourth amendment right by saying get out of my house don't come in here you're not welcome and they were subsequently arrested for it I'll reserve the rest of my time but there are no other questions all right thank you good morning may it please the court my name is Patricia Jones and I represent the United States one thing that my opponent has not grappled with here is that the standard of review on the initial entry is clear error the district court made a finding of fact that there was an emergency that justified the officers in entering the home to address the domestic violence situation and that is a factual determination that is reviewed only for clear error there is no clear error here first off there's no dispute about the underlying facts the police officers received a 9-1-1 call that mrs. Jackson had been beaten she called her sister she said she couldn't breathe and the sister reported that mrs. Jackson has asthma the police officers respond and they respond in force not only does sergeant Vincent arrive and then he's backed up by detective Sanchez but the narcotics officers arise arrive and and somehow miss Hogan tries to make that into something bad this is a situation where the police are being told that a woman is being beaten and she thinks you know only two officers should arrive and you know that's enough there there is nothing wrong with more officers arriving to make sure not only that the inhabitants of that house are safe but that the responding officers are safe they don't know what they're going to see when they get there when they do get there a bystander indicates that mrs. Jackson is being beaten inside the home the officers can hear yelling and screaming from the house they describe it as a very intense argument they described that there is cursing going on when they get to the door they see the two of them as our detective Sanchez testified face-to-face the two of them are close together within arm's reach and they don't stop at the door to wait and say well hey what's going on they immediately go in and that's what we would want police officers to do as you asked judge Sanchez Ramirez she should not have to wait to be punched the officers should not have to wait until the victim is punched before they go in the situation is volatile and they need to react and the officers both testified about that they said that the reason they went in was that they they needed to separate the two to make sure that everyone was safe and they needed to know what had happened because they had information that mrs. Jackson had already been punched and they needed to address that situation the district court credited that testimony and the district court found that that was reasonable there is no clear error here and that's really the end of the story because essentially miss Hogan admits that that's the whole case it matters whether the initial entry was good miss Hogan in her briefing would have you believe that domestic violence is not a serious enough crime to warrant an entry into the house without a search warrant that is not the case the Supreme Court has specifically said that it would not be reasonable to argue that police officers do not have the authority to enter a home to protect a victim from domestic violence additionally miss Hogan's argument here is based on the Supreme Court's decision in Welch v. Wisconsin which was about a warrantless entry to arrest a DWI suspect and in that case the Supreme Court held that it mattered that all they were investigating was a DWI later in Brigham City versus Stewart the Supreme Court said that is not applicable when we're talking about the aid exception to the warrant requirement in those circumstances it doesn't matter what the seriousness of any offenses that the police are investigating when they go in what matters is whether there is someone inside who is in need either of aid because of an injury or in need of protection from an injury that maybe has not even yet occurred but how do you respond to miss Hogan's argument that they could see that she was not being injured at the time if they were there to aid her how she also ended up in handcuffs with charges well how she ended up with charges your honor is based on her failure to cooperate and her interference in the police investigation and that that is after the initial entry so the initial entry they see the arguing going on the intense arguing going on the two of them face to face and the police officer should not have to wait for that punch to be thrown your honor as you as you pointed out during miss Hogan's argument they can't just sit here they stand back and wait watch the two of them engaged in this intense are knowing that somebody has reported that mrs. Jackson was already beaten she was already beaten according to the reports now some of the cases that we cited address this this sort of situation in the Fletcher case which is out of either the first or the Second Circuit I think it's I think it's the second in that case that the defendant had what wasn't a defendant this was a civil case but the abusive boyfriend was subject to a protective order and the police went by the house and they saw the boyfriend in the house just engaged in a conversation with his girlfriend and they could see no evidence of conflict whatsoever none that's in in the decision and importantly in that case while there were numerous instances where the girlfriend miss Fletcher had reported her boyfriend for abusive behavior the behavior was damaged to property it was injuring her kitten it was yelling screaming refusing to leave the house drunkenness it was it was a lot of bad behavior that made her feel threatened but there was no violence she even testified that she had there was no violence he had never heard so the police officers go there there's no history of violence there's no report of violence there's no sight of violence there's no sound of violence and they go in the house first they knock on the door miss Fletcher doesn't answer then she refuses them entry they still go in and it was deemed acceptable because they needed to protect her but they they never saw any violence the police don't have to wait for that the Supreme Court pointed out as much they said that the the duty of a peace officer is not merely to render aid to casualties it is to protect individuals to restore order and protect people and that's the situation here so even if they didn't see the violence actually occurring at that minute it was their duty to make sure that mrs. Jackson was protected that the situation did not escalate and that nothing bad was going to happen to mrs. Jackson as far as the protective sweep I think that miss Hogan conceded that the unlawfulness of the protective sweep has something to do with the initial entry and so if you go back to the the initial entry was good under the emergency aid exception I think her protective sweep argument fails but also it fails under the Supreme Court's case of Maryland versus buoy because in that case the Supreme Court held that even without any reasonable suspicion you can search the immediate area including in closets and hiding spaces of the location of an arrest and that's what happened here the kitchen at least was the location of the arrest if if the rest of the home is considered without outside the scope of that Maryland versus buoy protective sweep it doesn't matter because nothing that was anywhere else in the home was used in in the warrant application so the protective sweep would not beyond the kitchen would not have affected the warrant your honors had questions about the smell of marijuana from the house and miss Hogan said that sergeant Vincent's testimony was that he smelled the marijuana immediately when he got out of his car and therefore he had no way of knowing where it was coming from but that's actually not what his testimony was at record page 604 he testified that it was as he was walking up to the porch he could smell it and that it was coming from inside the house so all of the officers who testified about the marijuana smell said it was coming from outside the house and it's in fact corroborated by the fact that there were burned cigars with marijuana in the house and a hookah for smoking marijuana in the house which indicates that it was it was reasonable that the officers did smell marijuana and of course judge Ramirez as you point out the question is what was in the affidavit and the affidavit said there was marijuana smell a strong odor of marijuana emitting from the house let me turn to the issue of warrant itself and whether there was a false statement in the warrant first let me know that this issue is subject to plain error review only because the Franks issue was not raised in the district court of all the issues raised in this appeal the only one that was raised in the district court is about the constitutionality of the initial entry that's the only one that that was preserved in the district court so on the Franks issue there is no false statement in the affidavit the affidavit says that detective a bear saw the scales and the baggies in the home in plain view he doesn't say saw it from the porch he doesn't say saw it from outside he says he saw it and there's no dispute that he did see it so there's no there's simply no false statement in the affidavit if the affidavit is ambiguous which I don't think it is but to the extent that it might be considered ambiguous because the prior sentence was about what happened on the porch then the ambiguity should be resolved in favor of the truthfulness of the statement and that's what this court's cases have have repeatedly said but the district court didn't make a finding that there were no false statements in the affidavit did that's correct your honor the district court did not make a finding on this whatsoever but if there is a reasonable view of the evidence that would support the court's order denying suppression then this court should take that reasonable view of the evidence viewing the evidence in the light most favorable to the government and uphold the district court suppression order even though the court didn't make a decision on it one way or another and the evidence it is the defendant's burden to prove the falsity of the statement and the defendant cannot show plain error in the court's failure to find that the statement was false because for one thing two officers who should be deemed credible if viewed in the light most favorable to the government both testified that they could see the scales and baggies from outside the home and those officers although the district court didn't didn't say I adopt that testimony and that I find that testimony credible the district court did find those officers to be credible in other respects so at the very least the court didn't reject their credibility altogether this the second thing and and I believe I neglected to say this in my brief and I apologize did Sergeant Vinson also said that the scales and baggies could be seen from the porch he said he didn't remember whether he saw them from the porch or after he went in that it was fluid that he just went in and he has no memory of when he first saw them and of course obviously his attention would have been directed to what was going on in front of him right then and there but he said and remember later he was outside on the porch talking with the other officers he testified that you could see the scales and baggies from outside on the porch and the judge did find that that Sergeant Vinson's testimony on the whole was credible so that although that's not a factual finding on the specific issue we're talking about it lends support to our argument that there was no plain error in the court not finding a false statement well didn't the court presume there was a false statement for purposes of its analysis what the court did was even if there was a an intentional false statement the smell of marijuana was sufficient to support the warrant and there was no basis for suppression so I don't think the court said I will I will take it as a fact that that there was a false statement intentionally or recklessly made I think it just said even if let's put that aside even if that were the case the warrant is good because of the smell of marijuana and I think that's you know that's an additional reason to reject the defendant's argument here has this court ever held that the smell of marijuana is sufficient probable cause to enter a home your honor in the Thurman case which is an unpublished case that the district court cited and that we cited in our brief that the court held that the smell of marijuana constituted probable cause for the entry did the court say may in in one part it said may but then later in the decision it said that it supported probable cause that the sentence about may is earlier up and I forget why but it later says that the smell of marijuana supported probable cause is that what you're asking us to hold here today that the smell of marijuana is sufficient to establish probable cause yes your honor or a warrant to enter a home yes your honor and and I also cited a Supreme Court case from maybe the 1940s or something like that that said it said we have never held that the smell of an illegal drug if it's particular enough that can be recognized is insufficient probable cause to issue a warrant and so I think that that says the Supreme Court says probable cause can be established by smell in that case I believe it was opiates in a hallway and the Supreme Court said that's enough so I don't think there's really a question here it's not like there's the and I suspect the reason there's not a lot of cases about smell of marijuana being probable cause to enter a house as opposed to enter a car is because if you have a smell of marijuana emitting from a car that probable cause alone justifies the officers in searching the car so you're going to have an immediate search and you and then it's going to the issues going to be raised in in the ensuing criminal prosecution if officers are and they smell marijuana that's not a basis for them to immediately enter the home that is just probable cause so unless they have exigent circumstances or a warrant they can't just go in it doesn't mean they don't have probable cause it just means probable cause is not enough to enter the home and in any event I don't see a distinction between probable cause in the context of a car or probable cause in the context of a house and again we're dealing with plain error here your honor that this issue was not raised in the district court there is no decision of this court that says while an odor of marijuana will support a search of a car it will not support a search of a home and absent that kind of authority the defense cannot show plain error here it there's no authority that says that and it's also not reasonable to believe that probable cause is probable cause it is a fair probability that evidence of a crime can be found within so if this odor of marijuana gives you a fair probability that that there's marijuana in the car then odor of marijuana in a house gives you a fair probability that there's marijuana in the house and so I don't I don't think there's a distinction here that's important and besides that there's no plain error because there's no case well let's talk about the vehicle then vehicle miss Hogan contends that after mr. Jackson gave consent for the search and the initial search yielded nothing that he should have been allowed to leave at that point and that continued detention was a violation of his Fourth Amendment rights I'd like for you to address that yes your honor if there were only reasonable suspense reasonable suspicion that supported his detention the United States would need to show that the officers were diligently pursuing a means of investigation that was likely to quickly dispel or confirm their reasonable suspicion but what we're dealing with here is not just reasonable suspicion it's probable cause and that probable cause gives authority for an arrest and when there's probable cause and authority for arrest the length of detention is no longer important what's important is that there is probable cause for the arrest and there's probable cause based on the odor of marijuana there's probable cause based on the FBI investigation and there's even probable cause which I don't think I mentioned in in the brief because he was driving with a suspended driver's license which is a basis for arrest but you need not even get there the amount of evidence that the police had based on the FBI investigation that the defendant had cocaine in his truck that night not not like a couple of weeks ago when they did a control by not you know three days ago that very night that he had just gotten between on his you know when he was in Baton Rouge you know 20-30 minutes before the there's strong strong evidence there's not it's it it's beyond probable cause I believe but anyway there was probable cause that justifies an arrest and it justifies the search of the vehicle without consent in any event the vehicle can be searched based on the probable cause developed in the FBI investigation and based on the odor of the marijuana thank you thank you counsel excuse me just a few points if there are any questions of course be happy to answer them but as far as whether domestic violence in and of itself justifies a warrantless entry into a house I think that every case that is cited by my friend is distinguishable and I distinguish them all in my reply brief this is not a case involving a closed door this is not a case involving a hypothetical what's happening in there this is a case with the open door there's clear as a clear visual on both parties and recently in lanes versus California the Supreme Court has declined to say that it's justified to that there the exigent circumstances always exist whenever to whenever their police are pursuing a misdemeanor and in this case this is a this is a domestic violence call which the officers testified was a misdemeanor they're got there out there to investigate a misdemeanor they see that nothing's happening they're ultimately arrested for three misdemeanors none of which stick and so the exigencies in this case simply did not warrant the initial warrantless entry into the into the house as far as whether there is no distinction between car and house I think that another recent case of coniglia justice Thomas is very short opinion notes that there the home is different than the house that's repeatedly and you're right just judge Ramirez that this this court has never held that the odor of marijuana by itself justifies a warrantless entry or you know probable cause to enter a house the Thurman case which is the unpublished decision that was relied on by the district court is very distinguishable from this case they were investigating somebody who had fired off dozens of rounds of a high-powered rifle they get to a house the guy comes out he's looking nervous and twitchy and there's marijuana wafting out from the house and and what this court said is that the odor of marijuana in such circumstances may may support a finding of justification for entry and so I think that also my friend noted the buoy decision about the press to the protective sweep that the only area of the house that was really warranted for a protective sweep was the kitchen because that was the area immediately where the Jacksons were arrested lieutenant Vincent and officer Sanchez were inside the kitchen for they were there long enough to get into an argument to detain both them's officers one of them drew a taser so they were inside this kitchen if you look at the pictures it's a very small kitchen living room area there's nowhere where if somebody's hiding in that general area I think it would be pretty pretty apparent to the initial responding officers and what in Galio says is that by the time him and detective a beer arrived the narcotics agents the house was already secure so what if there's no need to sweep the house at this point because the house had already been secured the Jacksons are already in the back of police units going to be booked the protective sweep is not justified I'm happy to answer any questions so if you don't have any Thank You counsel and thank you for the opportunity thank you so much thank you we had asked this the final justice act attorney that a very important group of lawyers for our benefit taking on those kinds of cases for us thank you always appreciate you as well all right I will call the second case